**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
———————————————————

JUSTIN HARRISON BIRCH, individually
and as personal representative of the estate
of Virl Lane Birch; JOY FINLAYSON
BIRCH; JORDAN DOUGLASS BIRCH;
COLTON BENNION BIRCH,

     Plaintiffs - Appellants,

v.                                                                No. 15-4066

POLARIS INDUSTRIES, INC.,

     Defendant - Appellee.
———————————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:13-CV-00633-RJS)**
———————————————————

Richard Leon Denney, Denney & Barrett, P.C., Norman, Oklahoma (Lydia JoAnn
Barrett, Denney & Barrett, P.C., Norman, Oklahoma; Bradley H. Bearnson and Aaron K.
Bergman, Bearnson & Caldwell, P.C., Logan, Utah, with him on the briefs), appearing
for Appellants.

Ryan L. Nilsen, Bowman and Brooke, LLP, Minneapolis, Minnesota (Nathan J.
Marcusen, Bowman and Brooke, LLP, Minneapolis, Minnesota, and Paul G. Cereghini,
Bowman and Brooke, LLP, Phoenix, Arizona, with him on the brief), appearing for
Appellee.
———————————————————

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.
———————————————————

**MATHESON**, Circuit Judge.
———————————————————

Virl Lane Birch died when the off-road vehicle in which he was riding flipped over and pinned him to the ground. His surviving family members sued Polaris Industries, the vehicle manufacturer, for strict products liability, negligence, and breach of warranty, invoking the district court's diversity jurisdiction under 28 U.S.C. § 1332. Arguing there was no evidence Mr. Birch's vehicle was defective at the time of sale, Polaris moved for summary judgment. Well after the deadlines for amending the pleadings and for discovery had passed, Mr. Birch's survivors filed motions (1) to add new theories to their complaint, and (2) for additional discovery. A magistrate judge denied both motions as untimely, and the district court affirmed the magistrate's ruling. Based on the allegations in the unamended complaint, the district court then granted summary judgment to Polaris on all claims.

Mr. Birch's survivors now appeal the district court's denial of their two motions and the grant of summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. **BACKGROUND**

### A. *Factual History*

On April 22, 2011, the Polaris Victory dealership in St. George, Utah, sold a 2011 Polaris RZR 800 ("2011 RZR") to Mr. Birch. He and his son, Jordan Birch, took the 2011 RZR—an off-road vehicle—for a ride on May 4, 2011. While they were driving over a road bump, the 2011 RZR tilted over onto its passenger side, face down, injuring Mr. Birch's hand, which was trapped beneath the vehicle.

The crash destroyed the 2011 RZR's roll-over protection structure ("ROPS"), a frame of steel tubes and bars that sits atop the vehicle's passenger cabin. The ROPS, which the parties refer to alternatively as a "roll cage" or "cab frame," is intended to protect passengers "in the event of a pitchover accident." Aplt. App., Vol. 4 at 847. Moto Zoo Powersports in St. George estimated that repairing the ROPS and other damage to Mr. Birch's 2011 RZR would cost $6,008.69.

Unhappy with that figure, Mr. Birch asked Skylar Damron, the Moto Zoo technician who had provided the estimate, to repair the 2011 RZR off book, in Mr. Damron's own garage. Because Mr. Birch was the friend of a friend, Mr. Damron agreed to repair the vehicle for a lower fee. Though he was not a Polaris employee, Polaris had certified Mr. Damron as a master service dealer technician. On June 30, 2011, Mr. Birch sent Mr. Damron an email indicating he would "like to price out" various pieces of equipment, including "[r]oll cage bars." Aplt. App., Vol. 1 at 82. Mr. Damron responded two weeks later with a list of parts he would need to install, one of which was a "2pc roll cage." *Id.* at 83.

Mr. Damron ordered a new, unused ROPS from a seller on Craigslist.com, whose name Mr. Damron could not remember. The ROPS had been manufactured for use with a 2008 Polaris RZR. Between the 2008 and 2011 model years, Polaris had made several changes to the design of its ROPS. As relevant here, the couplers on the 2011 ROPS— that is, the components that attach the ROPS to the vehicle's main frame—employ a system of indents and raised tabs that interlock with one another. By contrast, the "mating surfaces" on the 2008 ROPS had "flat faces," with no tabs or indents. Aplt.

- 3 -

App., Vol. 4 at 818. To fit the new 2008 ROPS onto Mr. Birch's 2011 main frame, Mr. Damron ground off the tabs on the main frame's couplers. Without this modification, the two structures could not have fit together.

On June 4, 2012, Mr. Birch and a friend drove the modified 2011 RZR through Sand Hollow State Park in Washington County, Utah. As they were ascending a sand dune, the vehicle "went airborne a short distance" and pitched forward onto the "downsloping dune face." Aplt. App., Vol. 4 at 814. The ROPS, which buckled on impact, pinned Mr. Birch to the ground. He died shortly thereafter.

### B. *Background Law*

Appellants' claims sounded in strict products liability, negligence, and breach of warranty. Under Utah law, all three claims require proof that a product's injury-causing defect existed at the time the product was sold.

The Utah Court of Appeals has held that to prevail on a strict products liability claim, the "plaintiff must show (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed *at the time the product was sold*, and (3) that the defective condition was a cause of the plaintiff's injuries." *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct. App. 1994) (emphasis added) (quotation omitted).

It does not appear Utah courts have explicitly applied this requirement to a products liability negligence claim. But the case law indicates no claim for products liability negligence will lie if the defect in question did not exist at the time the product was sold. *See Slisze v. Stanley-Bostitch*, 979 P.2d 317, 319-20 (Utah 1999) (recognizing

- 4 -

negligence action arises out of state statute providing that "[n]o product shall be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer" (quoting Utah Code Ann. § 78-15-6)).

Similarly, Utah statutory law brings breach-of-warranty claims within the defect-at-time-of-sale rule. The Utah Product Liability Act instructs that

> In any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product, a product may not be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.

Utah Code Ann. § 78B-6-703(1). Because an "action for damages resulting from a defective product can be based on claims of . . . breach of warranty," *Utah Local Gov't Tr. v. Wheeler Mach. Co.*, 199 P.3d 949, 951 (Utah 2008), a breach-of-warranty claim fails if the plaintiff cannot show the defect existed when the product was sold.

At oral argument, Appellants conceded Utah law requires a plaintiff to identify an injury-causing defect that existed at the time the product left the defendant's control.

## C. *Procedural History*

### 1. **The Complaint**

Justin Harrison Birch, Mr. Birch's son and the personal representative of his estate, together with Mr. Birch's wife and two other sons (collectively, "Appellants"), filed suit against Polaris in the District of Utah on July 3, 2013, seeking damages for

strict products liability, negligence, and breach of express and implied warranties.  Their complaint defines the product at issue as "a 2011 Razor, Model Ranger RZR 800, VIN# 4XAVY76AXZBB075066 . . . which was manufactured by Defendant POLARIS, and purchased by [Mr. Birch] from an authorized Polaris dealer, Polaris Victory of St. George, located in St. George, Washington County, Utah."  Aplt. App., Vol. 1 at 27. Throughout the complaint, Appellants allege Polaris "was and is engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, servicing, warranting, promoting, marketing, modifying and advertising the Model Ranger RZR 800 and each and every component part thereof."  *E.g.*, Aplt. App., Vol. 1 at 28.

### 2. **Parties' Discovery of a Modified ROPS**

The last day for Appellants to amend their pleadings was December 16, 2013. After two extensions, the district court set a June 6, 2014 deadline for fact discovery.

Appellants' expert Dr. David Renfroe testified he learned in October of 2013 that the ROPS on Mr. Birch's 2011 RZR had been replaced with a ROPS from a different model year, though he could not recall how he learned that fact.  Nor could he remember whether he realized at that time that the replacement ROPS was a 2008 model specifically.

Sometime in December 2013, Polaris produced to Appellants the Birch-Damron email correspondence from June and July of 2011.

Polaris deposed Mr. Damron on March 20, 2014.  He testified he had purchased the replacement ROPS from an unknown seller on Craigslist.com and that "it was brand-

new, it was in the package." Aplt. App., Vol. 1 at 87. Two weeks later, on April 4, 2014, Polaris filed a Notice of Non-Party at Fault, which alleged that "Mr. Damron is at fault and liable to [Appellants] due to his negligent and improper repairs, modifications, and alterations to the subject RZR, specifically the rollover protection structure ('ROPS')." *Id.* at 90-91. The Notice indicated that Mr. Damron had installed a replacement ROPS on Mr. Birch's 2011 RZR, in addition to making various other repairs. Polaris asserted in the Notice that "Mr. Damron's negligence caused and/or significantly contributed to [Appellants'] and [Mr. Birch's] alleged injuries and damages." *Id.* 1 at 90.

On May 1, 2014, Polaris's corporate representative, Aaron Deckard, sat for a deposition. He testified that "[i]f you try to order a 2008 or '9 or '10 cab frame and put it on a 2011 RZR, they won't fit and they're not designed to go together." Aplt. App., Vol. 2 at 291.

3. **Inspection of Mr. Birch's Vehicle**

On November 5, 2013, Appellants' counsel emailed counsel for Polaris to say she "would like to do a joint inspection (your guys and mine) to drill a hole in the cage tubing to measure the wall thickness of the tubing." *Id.* at 520. She also wrote that Appellants "would . . . want to cut out a medallion to test the hardness of material and get a chemical analysis." *Id.* at 520.

On April 22, 2014, Jeffrey Croteau, an expert witness hired by Polaris, inspected Mr. Birch's vehicle at a storage warehouse in St. George. He determined during that inspection that the ROPS on the vehicle at the time it crashed was made for a 2008 RZR

model, rather than a 2011 model. On June 26, 2014, representatives from both sides jointly disassembled the modified vehicle.

### 4. **Polaris's Motion for Summary Judgment**

Polaris moved for summary judgment on all of Appellants' claims on October 3, 2014. Polaris's motion argued that Appellants could not "show that an injury-causing defect existed in the 2011 RZR vehicle *as sold by Polaris*." Aplt. App., Vol. 1 at 104, 108 (emphasis in original). Mr. Damron's modification of the 2011 RZR, in Polaris's view, had introduced into Mr. Birch's vehicle a defect that had not previously existed, and therefore Appellants' claims were deficient as a matter of law.

### 5. **Appellants' Opposition to Summary Judgment and Motion to Amend**

On October 31, 2014, Appellants filed both a response to Polaris's summary judgment motion and a motion to amend the complaint. The latter motion sought to make two changes to Appellants' complaint. First, Appellants would have redefined the products at issue as (a) the 2011 RZR that Mr. Birch bought from Polaris Victory of St. George—which was the sole product included in the original complaint—and (b) "the 2008 model cab frame (aka 'ROPS Structure'), also manufactured by Defendant POLARIS, which was purchased and installed by Polaris-certified mechanic Skyler Damron." Aplt. App., Vol. 2 at 340. Second, Appellants would have added a claim that "inadequate training and evaluation were provided to Polaris-certified service/repair mechanics resulting in, among other things, unsafe assembly methods and insufficient knowledge of aftermarket parts compatibility." *Id.* at 346.

A magistrate judge orally denied Appellants' motion on March 5, 2015, and issued a written ruling to that effect on March 20, 2015.

6. **Motion for Additional Discovery**

On November 18, 2014—six weeks after Polaris moved for summary judgment and almost three weeks after they sought leave to amend their complaint—Appellants filed a Motion for Rule 56(d) Extension. They asked the district court to postpone ruling on Polaris's summary judgment motion so they could gather more discovery regarding the replacement ROPS. To justify this request, Appellants argued they had not discovered that the new ROPS was a 2008 model until the parties' disassembly of Mr. Birch's vehicle on June 26, 2014, explaining that the "2008 [ROPS] is largely indistinguishable from the 2011 model." *Id.* at 458. According to Appellants, the installation of the 2008 ROPS on the 2011 main frame suggested Polaris may have been liable for "failure to train or supervise its certified technicians"—i.e., Mr. Damron—and this possibility necessitated further discovery. *Id.* at 461.

The magistrate judge orally denied this motion on March 5, 2015, and included a brief discussion of it in his March 20, 2015 order. Neither the magistrate judge's oral ruling nor his written order addressed Polaris's motion for summary judgment.

7. **Status of Proceedings Following the Magistrate Judge's Ruling**

Appellants promptly filed objections to the magistrate judge's order denying their motion to amend and motion for additional discovery. The district court considered those objections and Polaris's motion for summary judgment at a March 31, 2015 hearing.

A quick summary of the proceedings up to that date will facilitate understanding of the district court's rulings.

The deadline for amending the pleadings was December 16, 2013, but Appellants did not file their motion to amend until October 31, 2014.

The discovery deadline was June 6, 2014, but Appellants filed their motion for additional discovery on November 18, 2014.

On October 3, 2014, Polaris moved for summary judgment on all of Appellants' claims. Appellants responded on October 31, 2014.

8. **The District Court's Rulings**

The district court began the March 31, 2015 hearing by announcing its view that, as pled in the complaint, Appellants' claims could not survive summary judgment because they could not prove "there was a defect in the product at the time and point of sale." Aplt. Br. Attach. 3 at 4:24-5:11. That is, because the 2011 RZR had been modified between the sale and Mr. Birch's accident, liability could not attach under Utah law. When the district court asked whether "the complaint as it's currently drafted doesn't survive this [summary judgment] motion, but that you think . . . you have to be given leave to amend the complaint in view of what's happened in this case," Appellants' counsel agreed. Aplt. Br. Attach. 3 at 10:23-11:7.

In light of this concession, the district court concluded that "this case is going to rise and fall on the viability of the amendment that [Appellants] seek." Aplt. Br. Attach. 3 at 11:8-12. It therefore turned to review the magistrate judge's order denying the motion to amend.

- 10 -

The district court explained it would review the magistrate judge's ruling under the "clearly erroneous or contrary to law" standard that Federal Rule of Civil Procedure 72(a) provides for non-dispositive matters. Appellants' counsel not only agreed in court this was the appropriate standard of review, but Appellants also had argued in their written objections to the magistrate judge's order that the district court should apply the "clearly erroneous or contrary to law" standard when reviewing that order.

The district court overruled Appellants' objections, concluding the magistrate judge had not clearly erred in finding Appellants failed to establish excusable neglect or good cause for their untimely motion to amend. Similarly, the court adopted the magistrate judge's finding that Appellants had failed to file a proper motion for extended discovery.

Having disposed of Appellants' motions, the district court considered Polaris's motion for summary judgment. Consistent with its stated intention at the beginning of the hearing, the court granted that motion because Appellants had "not presented evidence necessary to establish the existence of an element essential to all of the claims in their case, specifically the existence of a defect in the product as defined at the time and point of sale." Aplt. Br. Attach. 3 at 67:11-18.

On April 9, 2015, the district court entered judgment in favor of Polaris. Appellants filed a timely notice of appeal on April 29, 2015.

## II. DISCUSSION

Appellants argue the district court erred by affirming the magistrate judge's order denying their motions to amend and for additional discovery. They identify two alleged

- 11 -

errors: First, the district court mistakenly reviewed that order under the "clearly erroneous or contrary to law" standard, rather than de novo. Second, the court erroneously concluded Appellants had not provided sufficient justification for their delay in filing the motions. We conclude both claims lack merit: the district court applied the correct standard of review, and its conclusions did not constitute an abuse of discretion.

Appellants further argue that, even considering only their unamended complaint, the district court should have denied summary judgment to Polaris. But Appellants could not show, as they are required to under Utah products liability law, that Mr. Birch's crash resulted from a defect that existed at the time of sale. We therefore affirm the district court in full.

### A. *District Court's Review of a Magistrate Judge's Order*

The magistrate judge's order denied Appellants' motions to amend and for additional discovery. The magistrate judge did not consider or recommend a ruling on Polaris's motion for summary judgment.

### 1. **Standard of Review**

We have not previously addressed the standard of review we apply to a district court's determination of the legal standard for reviewing a magistrate judge's order. In analogous contexts, however, we have held that we review de novo. *See Brue v. Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006) ("While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine [under the REAL ID Act] whether the BIA applied the correct legal standard in making its determination. We review each of the issues raised in the petition de novo." (alterations

in original) (quotations omitted)).[1] We therefore hold that in this case, the district court's decision to use the "clearly erroneous or contrary to law" standard is subject to de novo review.

2. **Analysis**

A district court "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for eight enumerated types of motions that are considered to be dispositive of a party's claims, 28 U.S.C. § 636(b)(1)(A), none of which applies to the motions at issue here. Under Federal Rule of Civil Procedure 72(a), when a party objects to a magistrate's ruling on non-dispositive matters, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." If the district court refers dispositive matters to a magistrate judge for a report and recommendation, which did not happen here, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

---

[1] Other courts of appeals are in accord. *See Norton v. Spencer*, 351 F.3d 1, 4 (1st Cir. 2003) ("In reviewing a judgment on a petition for a writ of habeas corpus, this Court examines the legal conclusions of the district court, including the proper standard of review, de novo."); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) ("Our review of the district court's determination regarding the proper standard to apply in its review of defendant's decision is de novo."); *Nat. Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993) ("As to the first and third issues on appeal, that is, whether the district court properly applied the correct legal standard under the CWA in reviewing EPA's approval of the state water quality standards and [another issue], this court will apply a *de novo* standard of review.").

Notwithstanding Rule 72's clear division between dispositive and non-dispositive matters, we have held that "motions not designated on their face as [dispositive] are nevertheless to be treated as such a motion when they have an identical effect." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). Appellants seize on this language, arguing the magistrate judge's order on their motions to amend and for additional discovery had an effect "identical" to that of a dispositive order, necessitating de novo review.

But we need not decide whether the magistrate judge's order was dispositive for Rule 72 purposes. Even if it were, Appellants would not be entitled to reversal on that basis, as they waived their right to argue for de novo review in the district court. At the March 31, 2015 hearing, the district court informed the parties it intended to "employ a clearly erroneous or contrary to law standard of review." Aplt. Br. Attach. 3 at 11:12-24. When asked whether he agreed the district court had articulated the right standard, Appellants' counsel replied, "I do, Your Honor." Aplt. Br. Attach. 3 at 12:3-5. We therefore need not consider the contrary position on appeal. *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) ("If a theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it." (alterations omitted)).

## B. *Denial of Motion to Amend*

### 1. **Standard of Review**

We review for abuse of discretion a district court's denial of a motion to amend a complaint after the scheduling order's deadline for amendments has passed. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).

"An abuse of discretion occurs where the district court clearly erred or ventured beyond the limits of permissible choice under the circumstances." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012). A district court also abuses its discretion when it "issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs*, 613 F.3d 1229, 1239-40 (10th Cir. 2010).

### 2. **Legal Standard**

Two Federal Rules of Civil Procedure, Rules 15 and 16, govern the motion to amend.

Rule 15(a)(2) provides that once the deadline for amendment as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." District courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch*, 771 F.3d at 1240.

In practice, [the Rule 16(b)(4)] standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts. Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff knew of the underlying conduct but simply failed to raise tort claims, however, the claims are barred.

*Id.* (second alteration in original) (citations and quotations omitted).

3. **Analysis**

    a. *Magistrate Judge's Order*

The magistrate judge found Appellants "fail[ed] to establish excusable neglect and good cause" for their untimely motion to add a claim for negligent training. Aplt. App., Vol. 2 at 530-32. In particular, Appellants had learned through Polaris's April 6, 2014 Notice of Non-Party at Fault and Deckard's May 1, 2014 deposition that they might be able to allege claims for negligent training. Yet Appellants did not move to amend their complaint "until October 31, 201[4]—eleven months after expiration of the amendment deadline." *Id.* at 531. Even assuming they did not obtain the information they needed to seek amendment until the June 26, 2014 disassembly of Mr. Birch's 2011 RZR, Appellants had not offered an "adequate[]" explanation for waiting four months to file their motion. *Id.* at 531.

With respect to the proposed amendment redefining the products at issue, the magistrate judge similarly found Appellants had "fail[ed] to establish good cause and excusable neglect." *Id.* at 531. To support this conclusion, he cited the following evidence, all of which suggested Appellants had long known that Mr. Birch's 2011 RZR had been modified with a 2008 ROPS: Dr. Renfroe, Appellants' own expert, testified he

- 16 -

knew by October 2013 that the new ROPS was not a 2011 model year; the Birch-Damron email correspondence confirmed the original ROPS had been modified; Mr. Damron testified on March 20, 2014, that he had bought a new ROPS on Craigslist.com; Polaris filed a Notice of Non-Party at Fault in April 2014, indicating its intent to pin liability on Mr. Damron; and Mr. Deckard testified in May 2014 that a 2008 ROPS would not fit on a 2011 RZR main frame. The magistrate judge further reasoned that even if all this evidence did not give Appellants sufficient information to seek leave to amend, they obtained such information when the 2011 RZR was disassembled on June 26, 2014. But they offered "no adequate explanation for the four month delay between disassembly . . . and the filing of their motion to amend." *Id.* at 532.

   b. *District Court's Ruling*

   The district court found the magistrate judge "did not err in denying [Appellants'] motion to amend to add a new claim for negligent training and evaluation." Aplt. Br. Attach. 3 at 62:17-20. Polaris's April 6, 2014 Notice of Non-Party at Fault and Mr. Deckard's May 1, 2014 deposition—as well as Dr. Renfroe's knowledge of modification by October 2013 and the Birch-Damron email correspondence—showed the magistrate judge did not clearly err.

   The district court similarly affirmed the magistrate judge's ruling on the second proposed amendment, which would have redefined the products at issue. As the magistrate judge found, "several events prior to the June 26, 2014 disassembly should have given [Appellants] sufficient basis to conclude that they needed to seek leave to

amend." Aplt. Br. Attach. 3 at 64:20-23. But even after the disassembly, Appellants waited four months to seek amendment—with no adequate explanation.

c. *The District Court Did Not Abuse Its Discretion*

Appellants offer no explanation in their appeal briefs for why they waited four months to file their motion to amend after conducting the June 26, 2014 disassembly. Dr. Renfroe's October 2013 knowledge of the ROPS modification, Mr. Damron's deposition testimony, Polaris's Notice of Non-Party at Fault, and the June 26, 2014 disassembly all put Appellants on notice that they might need to amend their complaint. But it was not until October 31, 2014, that they filed their motion to amend. At the district court's March 31, 2015 hearing, Appellants argued they delayed four months because they needed time to review the record carefully. But Appellants neglected to make this argument to the magistrate judge. It was therefore waived.

Because Appellants "knew of the underlying conduct but simply failed to raise [their] claims," *Gorsuch*, 771 F.3d at 1240, they cannot establish "good cause" under Rule 16. The district court's Rule 16 analysis was not an abuse of discretion. As a result, there is no need to consider whether Appellants satisfied Rule 15.[2]

---

[2] The magistrate judge considered Appellants' motion under a two-step analysis previously adopted by some district courts in this circuit. At step one, courts ask whether a party seeking an extension after expiration of a deadline can show excusable neglect under Rule 6 and good cause under Rule 16, which are essentially the same standard. If so, then at step two courts "consider whether to allow amendment pursuant to Rule 15(a)." Aplt. App., Vol. 2 at 529. Although it is not clear from the transcript, the district court may have employed the same two-step analysis. This analysis differs—albeit marginally—from the procedure we outlined in *Gorsuch*, which predated the magistrate judge's order. A district court abuses its discretion when it employs an incorrect legal
Continued . . .

Appellants argue they should be given leave to amend because Polaris stymied their attempts to obtain discovery. But the citations and specific allegations they provide in support of this accusation are in most cases vague, confusing, conclusory, and unsupported by record evidence. We decline to consider this argument because it is unsupported and inadequately briefed, and therefore affirm. *See* 10th Cir. R. 10.3(B) ("When the party asserting an issue fails to provide a record sufficient for considering that issue, the court may decline to consider it."); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 n.11 (10th Cir. 2007) ("Where the record is insufficient to permit review we must affirm." (quotation omitted)); *Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005) (explaining that "we will not sift through the record to find support" for propositions to which a party does not adequately cite us); *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1272 (10th Cir. 2003) ("It is obligatory that an appellant, claiming error by the district court as to factual determinations, provide this court with the essential references to the record to carry his burden of proving error." (quotation omitted)).

---

standard. *See Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008). Nevertheless, to the extent the district court applied the wrong legal standard, that error is harmless. As explained above, we conclude that, under the proper *Gorsuch* framework, the final resolution of Appellants' motion was not an abuse of discretion. And in any event, Appellants waived their right to seek reversal on this basis when they told the district court during the March 31, 2015 hearing that they believed the magistrate judge had "correctly laid out the legal standard that applies." Aplt. Br. Attach. 3 at 12:10-12.

- 19 -

## C. *Denial of Motion for Additional Discovery*

### 1. **Standard of Review**

We "review . . . the district court's denial of deferment for expanded discovery pursuant to Rule 56(d) . . . for an abuse of discretion." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015).

### 2. **Analysis**

Under Federal Rule of Civil Procedure 56(d), a district court may permit additional time for discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." That declaration must specify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (alteration in original) (internal quotation marks omitted). "We expect Rule 56(d) motions to be robust, and we have observed that '[an] affidavit's lack of specificity' counsels against a finding that the district court abused its discretion in denying a request for additional discovery under the rule." *Ellis*, 779 F.3d at 1206 (alteration in original).

The magistrate judge found Appellants had "fail[ed] to establish good cause and excusable neglect in support of re-opening discovery." Aplt. App., Vol. 2 at 534-35. He therefore denied the motion "for the reasons specifically set forth . . . in connection with [Appellants'] motion for amendment." *Id.* at 535.

The district court concluded Appellants were not entitled to Rule 56(d) relief because they had not submitted a sufficiently detailed affidavit. "[F]or that reason and those set forth in [the magistrate judge's] memorandum decision," the district court overruled Appellants' objections regarding the motion for additional discovery. Aplt. Br. Attach. 3 at 66:25-67:3.

We find no abuse of discretion in this ruling.

Appellants' motion for additional discovery incorporated by reference two declarations they had filed with a previous discovery motion. In one of those declarations, attorney Brad Bearnson attested that it was not until April 7, 2014, that Polaris produced "[ROPS] design records" and "documents relating to the [ROPS] design" that Appellants had requested "several times." Aplt. App., Vol. 2 at 375. Because of Polaris's alleged stonewalling, Bearnson asserted, Appellants did not discover until the June 26, 2014 disassembly that "the [ROPS] in question was in actuality a 2008 Polaris roll cage." *Id.* at 377.

The relevant portion of Appellants' second declaration, which was sworn by attorney Jason Robinson, asserts in its entirety:

> In the course of this action, [Polaris] was requested but did not disclose documents relating to the design of the subject [ROPS]. I along with other co-counsel conferred with [Polaris's] counsel regarding the missing disclosure. We urged [Polaris] to disclose several times, on February 14, 2014, March 4, 2014, March 19, 2014, and again on April 10, 2014.

Doc. 109-2 at 2.

These declarations do not contain the information we require for Rule 56(d) motions. Initially, it is not clear what information Appellants sought. Robinson's

declaration refers to "documents relating to the design of the subject [ROPS]," and

Bearnson mentions "documents relating to the [ROPS] design." But neither attorney

identifies which documents in particular they have in mind. Further, although they

appear to describe "why [their desired information] cannot be presented currently" and

"what steps have been taken to obtain [that information]," they made no effort to explain

"how additional time will enable [Appellants] to obtain those facts and rebut the motion

for summary judgment." *Valley Forge Ins. Co.*, 616 F.3d at 1096 (quotation omitted).

Given the declarations' "lack of specificity" and failure to satisfy each of the four Rule

56(d) factors, we cannot say the district court "clearly erred or ventured beyond the limits

of permissible choice under the circumstances." *Hancock*, 701 F.3d at 1262 (quotation

omitted).[3]

### D. *Motion for Summary Judgment*

1. **Standard of Review and Summary Judgment**

"We review a grant of summary judgment de novo, drawing all reasonable

inferences and resolving all factual disputes in favor of the non-moving party." *Yousuf v.*

*Cohlmia*, 741 F.3d 31, 37 (10th Cir. 2014). "Although our review of the record is de

---

[3] In their opening appeal brief, Appellants attempt to carry their Rule 56(d) burden by pointing to a declaration another of their attorneys, Lydia Barrett, submitted in support of a previous motion to extend fact discovery. This declaration was not attached to or cited in Appellants' November 18, 2014 motion for additional discovery. We therefore do not consider it in reviewing the district court's ruling. Regardless, that declaration would not change the outcome of the analysis, as even Appellants concede it does not explain "how additional time would enable them to gather the facts in issue." Aplt. Br. at 30.

novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 (10th Cir. 2008) (internal quotation marks omitted).

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At "the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

2. **Analysis**

Because the district court properly denied Appellants' motion to amend, Polaris's motion for summary judgment turns on the allegations in Appellants' unamended complaint. The district court correctly concluded there was no genuine dispute that the product identified in that unamended complaint did not contain an injury-causing defect at the time it was sold.

The unamended complaint defines "The Product" at issue as "a *2011 Razor*, Model Ranger RZR 800, VIN# 4XAVY76AXZBB075066 . . . which was *manufactured*

*by Defendant POLARIS*, and *purchased by [Mr. Birch] from an authorized Polaris dealer, Polaris Victory of St. George*, located in St. George, Washington County, Utah." Aplt. App., Vol. 1 at 27 (emphasis added). Polaris did not manufacture a 2011 Razor fitted with a 2008 ROPS, and Mr. Birch did not purchase such a hybrid vehicle from Polaris Victory of St. George. Nor was the 2008 ROPS a "component part" of any 2011 Razor. The unamended complaint cannot be read to include a claim for injury arising out of the 2008 ROPS installed by Mr. Damron. Because there is no record evidence to suggest Mr. Birch's unmodified 2011 RZR contained a defect that caused his death, any injury-causing defect did not exist at the time the 2011 RZR was sold. Appellants therefore could not prevail under Utah products liability law. *Burns*, 876 P.2d at 418; *Slisze*, 979 P.2d at 319-20; *Wheeler Mach. Co.*, 199 P.3d at 951. In addition, Appellants conceded at the March 31, 2015 hearing that "the complaint as it's currently drafted doesn't survive this [summary judgment] motion." Aplt. Br. Attach. 3 at 10:25-11:4.

Summary judgment was proper.

### III. CONCLUSION

The district court applied the correct legal standard in reviewing the magistrate judge's order and did not abuse its discretion in denying Appellants' motion to amend and motion for additional discovery. Faced only with Appellants' unamended complaint, the district court properly granted summary judgment to Polaris on all claims.

We therefore affirm the district court.