**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ISOKE N. JENKINS-DYER,

    Plaintiff - Appellant,

v.

EXXON MOBIL CORPORATION;
DOUGLAS F. GARRISON,

    Defendants - Appellees,

and

ANITA L. DRAYTON,

    Defendant.

No. 15-3261
(D.C. No. 2:13-CV-02489-JAR-DJW)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

    This appeal arises out of competing claims to a deceased employee's savings

plan. Pro se plaintiff Isoke N. Jenkins-Dyer appeals the grant of summary judgment

to defendants Exxon Mobil Corporation and Douglas F. Garrison (collectively

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exxon) and the denial of her motion for partial summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.       Background

We view the undisputed facts and the inferences to be drawn from them in the light most favorable to Ms. Jenkins-Dyer, as the party opposing summary judgment. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1138 (10th Cir. 2011). Ms. Jenkins-Dyer is the child of Connington L. Wood, a former Exxon employee who owned an ExxonMobil Savings Plan (Savings Plan) worth about $94,000. Mr. Wood died on May 7, 2007. Defendant Anita L. Drayton Wood claimed ownership of the Savings Plan as Mr. Wood's surviving spouse. On May 14, 2007, one week after Mr. Wood's death, Ms. Drayton Wood recorded a marriage license in Harris County, Texas, certifying that she and Mr. Wood were married in a ceremony on March 29, 2007. Ms. Jenkins-Dyer disputes Ms. Drayton Wood's evidence of the marriage and claims that she, as Mr. Wood's child, is entitled to the Savings Plan proceeds.

The Savings Plan is an "employee pension benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA). Defendant Garrison was the administrator of the Savings Plan. Under the Savings Plan's terms, because Mr. Wood had not designated a beneficiary, the proceeds were to be paid upon his death to Mr. Wood's spouse, or if none, to his children.

Mr. Wood owned other assets through his employment for which he also did not designate a beneficiary. To determine the beneficiary of his employee pension

2

and disability plans, Exxon brought an interpleader action in 2008. Also in 2008, Life Insurance Company of North America filed suit in interpleader to ascertain the beneficiary of Mr. Wood's life insurance policy. Although Ms. Drayton Wood was named as a defendant and served with process in each case, she did not appear or respond. Both cases were therefore decided by default judgment in favor of Ms. Jenkins-Dyer.

Exxon transferred ownership of the Savings Plan to Ms. Drayton Wood in July 2007. In 2013, Ms. Jenkins-Dyer filed the underlying action in Kansas State Court claiming she owned the Savings Plan and that Exxon had breached its fiduciary duty to her for failing to provide Savings Plan information she had requested. Exxon removed the action to the Federal District Court of Kansas on September 18, 2013. Shortly thereafter, the district court dismissed Ms. Drayton Wood—a Texas resident—for lack of personal jurisdiction. Ms. Jenkins-Dyer has not challenged that ruling on appeal.

Over two years later, on September 25, 2015, the district court granted Exxon's motion for summary judgment, applying the Texas presumption that the marriage was valid and therefore Exxon had properly awarded ownership of the Savings Plan to Ms. Drayton Wood. The court relied on sworn Declarations of Ms. Drayton Wood and William A. Lawson, Pastor Emeritus of the Wheeler Avenue Baptist Church in Houston, Texas, who performed the marriage ceremony. The court rejected Ms. Jenkins-Dyer's claim for breach of fiduciary duty and statutory penalties and denied her motion for partial summary judgment. In particular, the district court

3

rejected Ms. Jenkins-Dyer's assertion that the default judgments entered in the litigation over Mr. Wood's other employee benefits dictated a ruling that she was the owner of the Savings Plan.

Ms. Jenkins-Dyer appeals, claiming the district court erred in entering summary judgment before allowing her to conduct discovery. In addition, she claims the court improperly decided disputed facts, weighed the evidence, and evaluated credibility. She also renews her claims that Exxon is estopped from arguing she is not the owner of the Savings Plan and that Exxon breached its fiduciary duty to her.

## II. Legal Standards

"This court reviews summary judgment orders de novo, applying the same standards as the district court." *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 1402 (2015). Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We have liberally construed Ms. Jenkins-Dyer's pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

4

## III.  Discussion

The parties do not dispute that the dispositive issue is whether Ms. Drayton Wood and Mr. Wood were married at the time of Mr. Wood's death. There is also no dispute that Texas state law applies to determine whether the marriage was valid.

### A.  Timing of Summary Judgment

Ms. Jenkins-Dyer first contends that the district court erred in granting summary judgment before she had an opportunity to complete discovery. She relies primarily on Rules 26(d) and (f) of the Federal Rules of Civil Procedure, which provide that a party may not seek discovery until a planning conference has taken place. She claims generally that she did not have the opportunity prior to Exxon's motion for summary judgment to discover potential witnesses or review documents. And she further asserts that in opposition to that motion she sought leave to discover information about payments made to anyone by Exxon for any employee benefit, information about her entitlement to damages and penalties, evidence of whether Exxon received information about Mr. Wood's deteriorating health, and evidence to support her claim that Mr. Wood's signature on the marriage license application differed from his signature on a 2006 will.

Ms. Jenkins-Dyer contends she was precluded from conducting discovery during the two years the case was pending because no discovery conference had been held as required by Rule 26(f). Indeed, she complains that "[t]he Court never scheduled that conference." [App. Brief at 21] But it was not the district court's responsibility to schedule a discovery conference. The parties—including parties

5

appearing pro se—bear the burden of arranging for a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(f)(2) ("The attorneys of record *and all unrepresented parties that have appeared in the case* are jointly responsible for arranging the conference . . . ." (emphasis added)). And she cites no authority stating that the lack of a Rule 26 conference prohibits the court from granting summary judgment. *See LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 644 (B.A.P. 10th Cir. 2014) ("Unlike other rules, which explicitly specify how early a particular motion can be filed, there is no waiting period to file a summary judgment motion."). Rather, the rules provide a mechanism to forestall decision on a motion for summary judgment pending further discovery.

"Under Federal Rule of Civil Procedure 56(d), a district court may permit additional time for discovery if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Birch ex rel. Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (internal quotation marks omitted). In the affidavit or declaration, the party "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Id.* (brackets and internal quotation marks omitted). Ms. Jenkins-Dyer did not satisfy these requirements. She did not file an affidavit or declaration under Rule 56(d), nor did she provide the information itemized above. Instead, she cites to her opposition to summary judgment wherein she stated that discovery would provide

6

information useful to her case. This is insufficient. To postpone a ruling on a motion for summary judgment in order to conduct additional discovery, a party must file a motion under Rule 56(d) supported by "an affidavit that identifies the probable facts not available and what steps have been taken to obtain these facts," and must further "explain how additional time will enable [the party] to rebut the movant's allegations of no genuine issue of material fact." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (internal quotation marks omitted). By failing to do so here, Ms. Jenkins-Dyer "has waived the argument that the grant of summary judgment should be set aside for lack of sufficient discovery." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008); *see also Pasternak v. Lear Petroleum Expl., Inc.,* 790 F.2d 828, 832–33 (10th Cir. 1986) ("Where a party opposing summary judgment . . . fails to take advantage of the shelter provided by [Rule 56(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate."). Thus, we find no error in the grant of summary judgment before Ms. Jenkins-Dyer completed discovery.

### B. Correctness of Summary Judgment

Ms. Jenkins-Dyer claims the district court improperly granted summary judgment based on its impermissible determination of contested facts and assessment of credibility. Because we agree with the district court that Ms. Jenkins-Dyer failed to present evidence that could rebut the presumption of a valid marriage, we reject her arguments.

7

She first argues that the Declarations of Ms. Drayton Wood and Mr. Lawson are not credible and therefore cannot constitute evidence that the marriage is valid. Specifically, she complains they do not include an explanation of why Ms. Drayton Wood did not file the marriage license until after Mr. Wood's death, why Mr. Wood stated on the marriage application that he was not delinquent in his child-support payments, when in fact he was, or why Ms. Drayton Wood had obtained an earlier, apparently unused, marriage license in 2006. She further criticizes the Declarations for not identifying and refuting various impediments to marriage, such as whether either party was married at the time of the ceremony. And she claims that both Declarations are inadequate because they do not state that Mr. Wood was present at the marriage ceremony, consented to it, was capable of consenting, or could consummate the marriage, and they do not address his use of narcotic pain medications at the time. Finally, Ms. Jenkins-Dyer contends that Mr. Wood's signature on the application for the marriage license differed from the signature on a 2006 will that Mr. Lawson witnessed.

None of these arguments are *evidence* that contradicts the Declarations. To the extent relevant at all, they go to the weight to be given the Declarations at trial. But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Declarations constitute evidence of Mr. Wood's marriage to Ms. Drayton Wood and, at the summary judgment stage, a

8

declaration is sufficient as long as it is based on personal knowledge. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Because both Declarations are based on personal knowledge, the district court properly considered them.

Ms. Jenkins-Dyer also contends the Declarations are substantively inadequate to establish that the marriage was valid. We disagree. Every marriage entered into in Texas is presumed to be valid unless expressly made void or annulled pursuant to Texas statutory law. Tex. Fam. Code Ann. § 1.101. "It has long been the established law of Texas that a ceremonial marriage entered into in accordance with legal forms will raise the presumption . . . of its legality." *Simpson v. Simpson*, 380 S.W.2d 855, 858 (Tex. Civ. App. 1964). But if no marriage ceremony took place or either party did not consent to the marriage, this presumption may be rebutted. *See Mpiliris v. Hellenic Lines, Ltd.*, 323 F. Supp. 865, 880–81 (S.D. Tex. 1970).

Accordingly, we first consider whether the undisputed evidence establishes that a marriage ceremony to which both parties consented took place and then address whether Ms. Jenkins-Dyer has come forward with any evidence that could render the marriage void or annulled under Texas statute.

In her Declaration, Ms. Drayton Wood stated under penalty of perjury that she married Mr. Wood in a ceremony performed by Mr. Lawson on March 29, 2007, and that she filed the marriage license on May 14, 2007. Mr. Lawson stated under penalty of perjury that he is a licensed or ordained Christian minister and that he performed a marriage ceremony between Ms. Drayton Wood and Mr. Wood on March 29, 2007, at

9

Wheeler Avenue Baptist Church in Houston, Texas.[1] Thus, the Declarations provide evidence that Mr. Wood and Ms. Drayton Wood participated in a ceremonial marriage. To dispute this fact, Ms. Jenkins-Dyer "may not rest on mere allegations in [her] complaint but must set forth *specific* facts showing that there is a genuine issue for trial." *Trevizo v. Adams*, 455 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted). She has failed to do so. We therefore conclude that the undisputed facts establish Mr. Wood and Ms. Drayton Wood participated in a ceremonial marriage.

Nevertheless, Ms. Jenkins-Dyer contends no presumption of validity arose because the Declarations do not include statements that Mr. Wood consented to the marriage. Although the Texas Court of Civil Appeals has held that, "free consent and agreement of the parties is essential to a valid ceremonial marriage," it also explained that a party's knowing compliance with the requirements for entering into a marriage "evidences voluntary consent to marriage and by force of law is conclusive that such party voluntarily consented." *Coulter v. Melady*, 489 S.W.2d 156, 158 (Tex. Civ. App. 1972). Accordingly, in Texas, "[c]onsent to a ceremonial marriage is normally shown by the parties' participation in the ceremony." 5 Elizabeth Williams, Texas Family Law Service § 39:9 (2007). A fair reading of the Declarations is that

---

[1] Mr. Lawson further declared that the "ceremony of marriage [was] valid under Texas law." ECF No. 86-15. Ms. Jenkins-Dyer challenges Mr. Lawson's Declaration, claiming that he was not qualified to opine on the legal validity of the marriage. We need not consider this issue because the Declarations provided sufficient evidence that Mr. Wood and Ms. Drayton Wood participated in a ceremonial marriage even without Mr. Lawson's opinion as to its validity.

10

Mr. Wood and Ms. Drayton Wood participated in the ceremonial marriage performed by Mr. Lawson. Ms. Jenkins-Dyer has failed to offer any evidence to the contrary.[2] We therefore agree with the district court that the undisputed evidence established that Mr. Wood and Ms. Drayton Wood entered into a consensual ceremonial marriage in Texas on March 29, 2007.

We next consider whether Ms. Jenkins-Dyer has presented evidence that could defeat the presumption of validity because the marriage was void or subject to annulment under Texas law. The distinction between a void marriage and a marriage that may be annulled, rather than dissolved through divorce, is important for purposes of our analysis. This is because Texas law provides that "a marriage subject to annulment may not be challenged in a proceeding instituted after the death of either party to the marriage." Tex. Fam. Code Ann. § 6.111. Because Mr. Wood died before Ms. Jenkins-Dyer instituted this proceeding, she can overcome the presumption of a valid marriage only by presenting evidence that could support a finding that the marriage is void. We therefore do not address the grounds in Texas for the annulment of a marriage,[3] including incapacity.[4]

---

[2] Ms. Jenkins-Dyer alleged that Mr. Wood's signature on the marriage license application is different than his signature on a will Mr. Lawson witnessed. But even assuming that provides some evidence Mr. Wood did not sign the application for a marriage license, she has offered no evidence that, contrary to the sworn testimony of Ms. Drayton Wood and Mr. Lawson, he was not present and did not participate in the marriage ceremony itself.

[3] A Texas court may grant an annulment of a marriage to a person: (1) between sixteen and eighteen years who married without parental consent or without a court order, Tex. Fam. Code Ann. § 6.102; (2) who was under the influence of alcohol or drugs at the time of the marriage such that the person lacked capacity to consent to

11

A marriage is void in Texas if it is entered into: (1) between persons of close consanguinity, Tex. Fam. Code Ann. § 6.201; (2) when one putative spouse is still married to another person, *id.* § 6.202; (3) when either or both parties is younger than sixteen years and no court order has been obtained authorizing the marriage, *id.* § 6.205; and (4) when a party is a current or former stepchild or step parent of the other party, *id.* § 6.206. Ms. Jenkins-Dyer has not argued that any of these grounds is present here.[5] She has therefore failed to present evidence that could dispute the validity of the marriage.

_____

the marriage and did not subsequently voluntarily cohabitate with the other party, *id.* § 6.105; (3) who did not know either party was impotent at the time of the marriage and did subsequently voluntarily cohabitate with the other party, *id.* § 6.106; (4) who was induced by fraud, duress, or force to enter into the marriage and did not subsequently voluntarily cohabitate with the other party after learning of the mental disease or defect, *id.* § 6.107; (5) who lacked the mental capacity to consent to the marriage or to understand the nature of the marriage ceremony because of mental disease or defect, at the time of the marriage did not know or have reason to know of the mental disease or defect, and did not subsequently voluntarily cohabitate with the other party, *id.* § 6.108; (6) who did not know that the other party was divorced from a third-party within thirty days of the marriage ceremony and did not voluntarily cohabitate with the other party after learning of the divorce, *id.* § 6.109; and (7) who married within the seventy-two-hour period immediately after the issuance of the marriage license if the petition for annulment is filed within thirty days after the marriage, *id.* § 6.110.

[4] Even where a party to the marriage lacked the mental capacity to consent, legal action to set aside the marriage may be brought only by the party or his guardian or next friend. Tex. Fam. Code Ann. § 6.108(a). Ms. Jenkins-Dyer does not claim she was Mr. Wood's guardian or next friend and thus was without authority to challenge the marriage on this ground, even if she had done so before Mr. Wood's death.

[5] The fact that Ms. Drayton Wood filed the marriage license more than thirty days after the marriage ceremony does not render the marriage either void or subject to annulment. Although Texas law requires a marriage license to be recorded within 30 days of the ceremony, Tex. Fam. Code Ann. § 2.206(a), the penalty for failing to do so is a fine, *id.* § 2.206(b), and does not provide a statutory ground for setting

In summary, the district court did not abuse its discretion by considering the Declarations. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (reviewing for abuse of discretion district court's evidentiary rulings at the summary-judgment stage). We further conclude on de novo review that Ms. Jenkins-Dyer's failure to produce relevant, admissible evidence to refute the Declarations was fatal to her claim that the marriage is invalid, and the district court properly held that Ms. Drayton Wood, as Mr. Wood's surviving spouse, is the owner of the Savings Plan.

## C.     Issue Preclusion

Ms. Jenkins-Dyer next asserts that the rulings in the prior litigation to ascertain the beneficiary of Mr. Wood's other employee benefits and life insurance policy are binding here. She claims that since she was determined to be the beneficiary of those assets, she is also the beneficiary of the Savings Plan.

Issue preclusion applies only "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000) (internal quotation marks and brackets omitted). Because Ms. Drayton Wood did not appear or respond in the prior cases, Ms. Jenkins-Dyer prevailed by the entry of default judgments. The validity of the marriage was not litigated or determined in those cases. Where the

---

aside the marriage as required by section 1.101.  Therefore, even if Ms. Drayton Wood did not comply with all of the formalities of filing the marriage license, "the failure to comply with these formalities does not render the marriage invalid unless a statute declares it so." *In re Estate of Loveless*, 64 S.W.3d 564, 576 (Tex. App. 2001).

13

previous case was resolved by entry of a default judgment, "none of the issues is actually litigated," so issue preclusion does not apply. *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009) (internal quotation marks omitted). The district court properly denied Ms. Jenkins-Dyer's motion for partial summary judgment on this ground.

### D. Breach of Fiduciary Duty and Statutory Penalties

Finally, Ms. Jenkins-Dyer argues the district court erred in denying her claim for breach of fiduciary duty based on Exxon's allegedly improper handling of her claim. She also avers that she is entitled to a statutory penalty pursuant to 29 U.S.C. § 1132(c)(1)(B), which authorizes a monetary penalty against an ERISA plan administrator who fails to comply with a request for information "with respect to any single participant or beneficiary."[6]

ERISA authorizes a "participant or beneficiary" to recover benefits due or to enforce or clarify her rights. *Id.* § 1132(a)(1)(B). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). Ms. Jenkins-Dyer was not a beneficiary of the Savings Plan, so Exxon, who administered the Savings Plan according to its terms, did not have and therefore could not breach any fiduciary duty to her. Moreover, Ms. Jenkins-Dyer has no remedy under 29 U.S.C.

---

[6] In addition to challenging the district court's ruling on the merits, Ms. Jenkins-Dyer challenges the magistrate judge's ruling that her penalty claim was barred by the statute of limitations. We need not address the limitations issue because we affirm on the merits.

14

§ 1132(a)(3)(B), which authorizes a court to redress violations of ERISA through "other appropriate equitable relief." "Courts have consistently held that this section does not authorize an award of extracontractual compensatory damages." *Alexander v. Anheuser-Busch Cos.*, 990 F.2d 536, 539 (10th Cir. 1993) (collecting cases). Therefore, we affirm the district court's grant of summary judgment on this claim.

## IV.  Conclusion

The judgment of the district court is affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge