FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

BRYAN SEALE, an individual,

    Plaintiff - Appellant,

v.

GARY PEACOCK, an individual; and
JOHN DOE and/or JANE DOE,
individuals whose true name(s) are
unknown,

    Defendants - Appellees.

No. 21-1144

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-03559-KMT)**

_____

Jared R. Ellis, Hall & Evans, LLC (Brian Molzahn with him on the briefs), Denver, Colorado, for Plaintiff – Appellant.

Andrew E. Swan, Leventhal Lewis Kuhn Taylor Swan PC (Michael D. Kuhn with him on the brief), Colorado Springs, Colorado, for Defendants – Appellees.

_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

This action involves two incidents targeting Appellant, Bryan Seale. First, in

November and December 2017, someone sent anonymous letters containing personal

and derogatory information about Mr. Seale to his acquaintances. Second, in December 2018, Mr. Seale discovered that someone had accessed his real estate business software account without authorization. Mr. Seale brought this action asserting claims against (1) his ex-husband and ex-employee, Gary Peacock, for accessing his real estate business account without authorization and (2) unnamed defendants for sending the anonymous letters.

The magistrate judge dismissed the claims in two separate orders. First, she granted with prejudice Mr. Peacock's motion to dismiss the claims alleged against him for failure to state a claim. Second, she denied Mr. Seale's motion to amend the complaint to substitute Mr. Peacock for the unnamed defendants and dismissed the remaining claims without prejudice. Mr. Seale appeals both orders. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse and remand in part.

## I.　BACKGROUND

### A.　*Factual History*[1]

Mr. Seale and Mr. Peacock were real estate agents in Colorado. The two agents were previously married to each other, and Mr. Peacock previously worked for

---

[1] This is an appeal of a Federal Rule of Civil Procedure 12(b)(6) dismissal of the claims against Mr. Peacock and a denial of a motion to further amend the complaint as to the claims alleged against the unknown defendants. None of the defendants have filed an answer to the Amended Complaint. Because of the procedural posture of the case, we describe the facts as they were alleged in the Amended Complaint, except where otherwise noted. *See Safe Streets All. v.*

Mr. Seale. They divorced on May 4, 2017,[2] and Mr. Seale terminated Mr. Peacock's employment on June 29, 2018.[3]

### 1. Anonymous Letters

In November and December 2017, an unidentified person sent at least fifteen letters to Mr. Seale's acquaintances. The letters included statements about Mr. Seale's dating and sexual activity, explicit photographs of Mr. Seale, his profile from a dating website, and references to Mr. Seale's business. In November 2017, Mr. Seale received an anonymous letter like those sent to his acquaintances, but his also included a hostile note, saying, "Do you like breaking up families" and "my attorney will be getting a subpoena to you to testify in my divorce case." App. Vol. 1 at 160.

Subsequently, four real estate agents left Mr. Seale's company, three clients stopped doing business with Mr. Seale, and two non-profit agencies stopped their associations with Mr. Seale's business. Mr. Seale alleged the anonymous letters were intended to, and did, harm his reputation and business.

---

*Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (accepting all well-pleaded factual allegations as true when reviewing a dismissal under Rule 12(b)(6)).

[2] This is the date stamped on the parties' divorce decree. As a public record, this is a fact "subject to judicial notice [that] may be considered in a Rule 12(b)(6) motion." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[3] This fact is found in Mr. Seale's Proposed Second Amended Complaint. Although the magistrate judge denied as moot the motion for leave to file this proposed complaint, we include this fact only for context. We need not accept it as true to resolve the issues in this appeal.

Mr. Seale reported the letters to the Colorado Springs Police Department and worked with the United States Postal Inspector to identify the sender. But, as of the time of filing the Amended Complaint, his efforts had not been successful and the sender remained unidentified.

**2. Unauthorized Access to Mr. Seale's CTM Software Account**

Mr. Seale used CTM Software ("CTM"), "an interactive real estate contract platform," to support his business. *Id.* at 158. The information on his CTM account included customers' names, addresses, phone numbers, email addresses, birthdays, and social security numbers; emails sent and received by Mr. Seale; the status of his client relationships; complete contract history for his clients; and other client documents like bank account information, mortgage account information, lender relationships, personal settings, account details, and payment histories.

A feature of CTM enabled Mr. Seale to view the login history of the account. In doing so, he determined that someone other than himself had logged into his CTM account nineteen times on or about December 13, 2018. Of those, at least one access went through an IP address that belonged to Liberty Toyota on Woodmen Road in Colorado Springs, Colorado. The same day as that access, Mr. Peacock was at Liberty Toyota getting a vehicle serviced. Mr. Seale also discovered that someone other than himself had accessed his CTM account once on or about December 17, 2018, via an IP address that belonged to Mr. Peacock's employer at the time. According to Mr. Seale, Mr. Peacock was "[t]he only individual who had access to [Mr. Seale]'s CTM logon information." *Id.* at 159.

4

### B.  *Procedural History*

Mr. Seale filed a complaint against Mr. Peacock and unnamed John Doe and/or Jane Doe defendants in Colorado state court in November 2019. Mr. Peacock removed the action to the United States District Court for the District of Colorado based on diversity jurisdiction.[4] Mr. Seale and Mr. Peacock consented to have a magistrate judge conduct all proceedings in the case.

After removal, Mr. Seale filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). In the Amended Complaint, Mr. Seale alleged three claims against Mr. Peacock: statutory civil theft; violation of the Stored Communications Act, 18 U.S.C. §§ 2701–2713 ("SCA"); and invasion of privacy by appropriation of name or likeness. Mr. Seale also asserted claims against the unknown defendants for intentional infliction of emotional distress/outrageous conduct, invasion of privacy by intrusion into seclusion, invasion of privacy by public disclosure of private facts, and fifteen counts of libel per se. The magistrate judge dismissed the claims against the defendants in separate orders, beginning with the claims against Mr. Peacock.

### 1.  Claims Against Mr. Peacock

Mr. Peacock moved to dismiss the three claims alleged against him in the Amended Complaint. He argued Mr. Seale had not alleged that Mr. Peacock intended

---

[4] When Mr. Seale filed the complaint, Mr. Peacock lived in Connecticut and Mr. Seale remained in Colorado. Mr. Seale also certified that he reasonably believed the amount in controversy exceeded $100,000. Thus, the district court had removal jurisdiction under 28 U.S.C. § 1441 and 28 U.S.C. § 1332.

to permanently deprive Mr. Seale of his property, as required to state a claim for civil theft. Mr. Peacock also argued that Mr. Seale failed to plausibly allege damages as required to support the remaining claims. In the Amended Complaint, Mr. Seale alleged he lost several business relationships after the letters were sent, and he stated, without explanation, that he suffered mental anguish from the invasion of his privacy.

As to the civil theft claim, the magistrate judge concluded allegations that Mr. Peacock accessed Mr. Seale's CTM account without authorization did not "support an inference that [Mr.] Peacock intended to permanently deprive [Mr. Seale] of his property." *Id.* at 263. As to the other two claims, the magistrate judge concluded Mr. Seale's statement that he suffered mental anguish "is a 'bare assertion' and a '[t]hreadbare recital[] of an element of the claim, which is unsupported and does not suffice at the pleading stage.'" *Id.* at 264 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The magistrate judge also recognized that "any damages flowing from [the] letters are irrelevant to the access of the CTM account" because the letters were sent over a year before the unauthorized person accessed the CTM account. *Id.* at 264–65. For these reasons, the magistrate judge granted the motion and dismissed all three claims alleged against Mr. Peacock. Without additional explanation, she dismissed the claims with prejudice.

Mr. Seale moved to amend the dismissals to be without prejudice under Federal Rule of Civil Procedure 59(e) and moved for leave to further amend the complaint to remedy the deficiencies in the damage allegations. Before the magistrate judge could rule on these motions, Mr. Seale submitted another motion to amend the

6

complaint to substitute Mr. Peacock in place of the unknown defendants. The magistrate judge denied the Rule 59(e) motion as premature and denied the first motion to amend as moot due to the second motion to amend.

## 2. Claims Against Unknown Defendants

Throughout the litigation, Mr. Seale tried to identify the person or persons who sent the disparaging letters. Over the course of a year, he brought four motions for an extension of time to serve the unknown defendants because his efforts to identify them had not yet been successful. In the final motion for an extension of time to serve the unknown defendants, Mr. Seale explained he was pursuing DNA analysis of the anonymous letters that had been delayed by the COVID-19 pandemic. He reported that the lab had finally completed the DNA testing and he expected the results soon. The magistrate judge granted a fourth extension but warned that if Mr. Seale failed "to serve the unknown defendants" by the new deadline, she would "dismiss the claims against the unknown defendants without prejudice pursuant to Fed. R. Civ. P. 4(m)." App. Vol. 2 at 36.

One week before the new deadline, Mr. Seale moved to amend the complaint because he "recently obtained additional factual information which . . . forms the basis for naming an individual defendant in place of the unknown defendant(s)." *Id.* at 38. In the proposed amended complaint, Mr. Seale alleged he found a photograph of his computer tablet taken while it was displaying his dating website profile. That profile contained the explicit photograph included in the anonymous letters. Mr. Seale alleged the photograph of his tablet had a reflection of the device that took

the photograph, which he claimed resembled Mr. Peacock's cell phone. Mr. Seale also alleged that Mr. Peacock showed Mr. Seale a copy of the explicit photograph during a therapy session in 2016. Thus, he sought to substitute Mr. Peacock for the unknown defendants as to the remaining claims.[5]

In reviewing the motion, the magistrate judge found Mr. Seale had not shown good cause for the amendment because the identifying information had been in his possession throughout the litigation and therefore, he had not acted diligently. She also determined he had not shown excusable neglect. Accordingly, the magistrate judge denied Mr. Seale's motion and dismissed the claims against the unknown defendants without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

Having dismissed all the claims alleged in the Amended Complaint, the magistrate judge entered final judgment. Thirty days later, Mr. Seale filed a notice of appeal from the final judgment, which incorporated the magistrate judge's orders dismissing Mr. Seale's claims against Mr. Peacock pursuant to Federal Rule of Civil Procedure 12(b)(6) and denying Mr. Seale's motion to amend the complaint with respect to claims against the unknown defendants.

## II.    DISCUSSION

On appeal, Mr. Seale challenges the (1) order granting Mr. Peacock's motion to dismiss the SCA claim pursuant to Rule 12(b)(6), (2) dismissal of the claims

---

[5] The proposed amended complaint omitted two of the libel per se claims Mr. Seale originally alleged against the unknown defendants and instead alleged only thirteen libel per se claims against Mr. Peacock.

8

against Mr. Peacock with prejudice,[6] and (3) order denying Mr. Seale's motion for leave to file an amended complaint substituting Mr. Peacock for the unnamed defendants. We review each of these issues in turn.

### A.    The Stored Communications Act Claim

Mr. Seale contends the magistrate judge erred when she dismissed his SCA claim under Rule 12(b)(6) because Mr. Seale can recover statutory damages regardless of whether he alleges any actual damages. Mr. Peacock disagrees and also argues Mr. Seale lacks sufficient Article III standing to bring the SCA claim. Because the standing issue would affect our jurisdiction to consider the other arguments related to the SCA, we address it first. For the reasons we now explain, we hold Mr. Seale does have standing. We then consider whether the magistrate judge erred in dismissing the SCA claim and ultimately conclude Mr. Seale failed to state a claim under the SCA.

### 1. Standing

We consider "the question of standing de novo." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228 (10th Cir. 2001). Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a

---

[6] Mr. Seale does not challenge the magistrate judge's decision to dismiss the statutory civil theft or invasion of privacy claims alleged against Mr. Peacock for failure to state a claim. However, Mr. Seale does challenge the district court's decision to dismiss all three of the claims alleged against Mr. Peacock with prejudice.

sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* at 157–58 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Mr. Peacock challenges the injury in fact element, arguing that Mr. Seale has not shown an injury in fact because he has not suffered actual damages from the alleged SCA violation.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). A federal statute giving a plaintiff a right to sue is not determinative of an injury in fact. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Rather, a plaintiff must also suffer an injury in fact that is both concrete and particularized. *Id.* However, this does not mean the injury must be tangible. *Id.* at 340. "Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* An intangible harm is concrete if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. Applying this standard, the Supreme Court has identified "reputational harms, disclosure of private information, and intrusion upon seclusion" as examples of concrete, intangible harms. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

To determine whether Mr. Seale has alleged an injury in fact, we must determine whether the harms protected by the SCA have a close relationship to the

harms traditionally protected by the courts. The SCA prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided" or "intentionally exceed[ing] an authorization to access that facility" and "thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).

Mr. Peacock compares the harm protected by the SCA to the common law tort of trespass to chattels, which traditionally requires actual damages. *See Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 207–08 (4th Cir. 2009) (comparing the SCA to the common law trespass to chattels). And because Mr. Seale has not alleged actual damages, Mr. Peacock argues Mr. Seale lacks standing. We are not convinced.

Although the harm protected by the SCA can be viewed as closely related to the harm associated with trespass against chattels, the SCA is also closely related to other traditional harms. Significantly, the SCA provides recourse for invasions of privacy in the realm of electronic communications. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("Congress . . . intended to protect these historical privacy rights when they passed the . . . SCA."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 276 (3d Cir. 2016) ("[T]he [SCA] aims to prevent 'potential intrusions on individual privacy.'" (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015))). The protection of these privacy rights does not require a showing of actual damages. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007)

11

(describing the requirements for privacy claims (citing the Restatement (Second) of Torts § 652B)). Yet, the Supreme Court has recognized these invasions of privacy as concrete harms for purposes of standing. *TransUnion*, 141 S. Ct. at 2204.

Mr. Seale alleged he suffered an invasion of privacy because Mr. Peacock, without authorization, intentionally accessed his CTM account, which contained electronic communications. Even assuming Mr. Seale has not alleged actual damages caused by that unauthorized access, the harms stemming from Mr. Seale's allegations are closely connected to the harms protected by traditional privacy claims where the unauthorized intrusion is itself actionable. Thus, Mr. Seale has sufficiently alleged an injury in fact caused by the unauthorized access that is redressable. Consequently, Mr. Seale has standing to bring the SCA claim.

That Mr. Seale has standing to bring his SCA claim, however, says nothing about whether he has sufficiently stated such a claim in the operative complaint. We undertake that inquiry now.

## 2. Rule 12(b)(6) Dismissal

We review an order dismissing claims for failing to state a claim under Rule 12(b)(6) de novo. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). Thus, like the magistrate judge, we consider whether the operative complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* But we "accept all the well-pleaded allegations of the complaint as true and [] construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 700 (10th Cir. 2014) (quotation marks omitted).

Mr. Seale contends he stated a claim under the SCA because he can recover statutory damages for a violation regardless of whether he has suffered actual damages. In the alternative, Mr. Seale claims he plausibly alleged he suffered actual damages from Mr. Peacock's unauthorized access of his CTM account. For the reasons explained below, we hold (1) a plaintiff must show actual damages to be eligible to recover statutory damages under the SCA and (2) Mr. Seale did not allege actual damages related to the SCA claim in the Amended Complaint.

*a. Actual damages and statutory damages*

As an initial matter, we must determine whether plaintiffs can recover statutory damages under the SCA if they have not suffered actual damages. This is an issue of first impression in this court. We begin our analysis of this novel question with the relevant provisions of the SCA. Then, we review the different approaches courts have used to answer this question. Ultimately, we hold SCA plaintiffs cannot recover statutory damages without first showing they suffered actual damages caused by the SCA violation.

i.  The Stored Communications Act

The SCA is a federal criminal statute, 18 U.S.C. § 2701(a), and it provides a private right of action to any "person aggrieved by any violation of" the Act, *id.* § 2707(a). Congress provided that private plaintiffs could obtain relief including "preliminary and other equitable or declaratory relief," "damages," and "a reasonable attorney's fee and other litigation costs reasonably incurred." *Id.* § 2707(b). Congress further specified what could be included as damages:

> The court may assess as damages . . . the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under the section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

*Id.* § 2707(c).

ii.  Persuasive authority

The first question before us is whether plaintiffs can recover the minimum statutory damages of $1,000 if they do not allege any actual damages.[7] The circuit courts that have considered this question have determined plaintiffs must have suffered actual damages as a prerequisite to obtaining statutory damages. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965–75 (11th Cir. 2016); *Van Alstyne*, 560 F.3d at 205;

---

[7] Mr. Seale did not allege that Mr. Peacock received any profits from the SCA violation, nor does he argue that he can sustain his claim for statutory damages because of "any profits made by the violator as a result of the violation." 18 U.S.C. § 2707(c). Thus, we do not address whether profits made by the violator, without actual damages, could support an award of statutory damages.

*see also Hovanec v. Miller*, 831 F. App'x 683, 685 (5th Cir. 2020) (unpublished) (applying the rule set forth by the Fourth and Eleventh Circuits). But a plethora of district courts in various circuits have disagreed. *Vista Mktg.*, 812 F.3d at 971–72 (collecting cases). The crux of the disagreement lies in whether the Supreme Court's analysis in *Doe v. Chao*, 540 U.S. 614 (2004), should be applied to the SCA. *See Shefts v. Petrakis*, 931 F. Supp. 2d 916, 917 (C.D. Ill. 2013) (describing the disagreement about whether the statutory interpretation in *Doe* applies to the SCA).

In *Doe*, the Supreme Court considered a question similar to the one we face here: "whether plaintiffs must prove some actual damages to qualify for a minimum statutory award of $1,000." 540 U.S. at 616. In *Doe,* however, the Court considered this question in context of the Privacy Act of 1974, not the SCA. *See id.*

> The relevant subsection within the Privacy Act stated,
>
> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

*Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)).

The Supreme Court held plaintiffs must show they sustained actual damages before they can recover the statutorily guaranteed minimum of $1,000. *Id.* at 620. The Court explained, "[w]hen the statute gets to the point of guaranteeing the $1,000

15

minimum, it not only has confined any eligibility to victims of adverse effects caused by intentional or willful actions, but has provided expressly for liability to such victims for 'actual damages sustained.'" *Id.* (quoting 5 U.S.C. § 552a(g)(4)). Then, the clause guaranteeing $1,000 limits it to a "'person entitled to recovery.'" *Id.* (quoting 5 U.S.C. § 552a(g)(4)). The Court explained, "the simplest reading of that phrase looks back to the immediately preceding provision for recovering actual damages." *Id.* The Court further reasoned, "the statute does not speak of liability (and consequent entitlement to recovery) in a freestanding, unqualified way, but in a limited way, by reference to enumerated damages." *Id.* at 621.

In support of a different interpretation, the petitioner in *Doe* asked the Court to review the legislative histories of comparable statutes that supposedly authorized statutory damages without actual damages. *Id.* at 626. One of these statutes was 18 U.S.C. § 2707(c), which is the SCA statute at issue here. *Id.* The Court declined to consider the meaning of the SCA or its legislative history, however, because the SCA was "passed well after the Privacy Act," and "'subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment.'" *Id.* at 626–27 (quoting *Solid Waste Agency of N. Cook Cnty. v. Army Corps of Eng'rs*, 531 U.S. 159, 169 n.5 (2001)). Thus, the Court did not opine on whether the SCA permitted statutory damages without actual damages. And the Court ultimately concluded the Privacy Act "guarantees $1,000 only to plaintiffs who have suffered some actual damages." *Id.* at 627.

16

Since *Doe,* numerous lower courts have answered the question the Court left open—whether the SCA requires plaintiffs to show actual damages before they are eligible to recover statutory damages. The circuit courts that have considered the issue have determined, as with the Privacy Act in *Doe*, plaintiffs must show actual damages before being eligible for statutory damages under the SCA. *Vista Mktg*, 812 F.3d at 965–75; *Van Alstyne*, 560 F.3d at 205–06. The Fourth Circuit was the first to consider this question in *Van Alstyne*, where it explained "the SCA and Privacy Act contain the substantively identical following phrase: 'but in no case shall a person entitled to recover receive less than the sum of $1,000,' which 'looks back to the immediately preceding provision for recovering actual damages.'" *Id.* at 205 (quoting *Doe*, 540 U.S. at 620). "Indeed, the only differences between the damages provisions in the two statutes is the SCA's use of the term 'suffered' instead of 'sustained' and its use of the phrase 'and any profits made by the violator.'" *Id.* (quoting 18 U.S.C. § 2707(c)). Therefore, the Fourth Circuit applied the reasoning in *Doe* to the SCA and held, "just as the Privacy Act required proof of 'actual damages' as a prerequisite to recovering statutory damages, so does the SCA." *Id.*[8]

---

[8] In addition to the circuit courts, some district courts have agreed with *Van Alstyne*. *See Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2020 WL 2557043, at *11 (E.D. Tex. May 20, 2020); *Thornton v. Thornton*, 492 F. Supp. 3d 810, 817 (W.D. Ark. 2020); *Pennartz v. Pennartz*, No. 4:16-cv-00859-KGB, 2017 WL 4159410, at *9 (E.D. Ark. Sept. 19, 2017); *see also Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*, No. C 10-3072-MWB, 2011 WL 13362662, at *1 (N.D. Iowa Apr. 27, 2011) (identifying the elements of a claim under the SCA as a preliminary matter, including an actual damages element, and requesting supplemental briefing about whether the elements identified are complete and accurate).

On the other hand, numerous district courts have concluded the reasoning in

*Doe* is not applicable to the language of the SCA.[9] These courts emphasized other

ways the SCA differs from the Privacy Act. The major difference they note is that

"the Privacy Act damages provision . . . includes restrictive language that 'seems to

dictate actual damages as the only remedy in that clause.'" *Maremont v. Susan*

*Fredman Design Grp., Ltd.*, No. 10 C 7811, 2014 WL 812401, at *7 (N.D. Ill. Mar.

3, 2014) (quoting *Shefts*, 931 F. Supp. 2d at 918). But "§ 2707(c) uses permissive

language—that the [c]ourt '*may* assess as damages' actual damages and

profits—which" according to these courts, "'seems to offer the actual damages

formula as one means of calculation' but not to the exclusion of statutory damages."

*Id.* (quoting *Shefts*, 931 F. Supp. 2d at 918) (emphasis added). In some district courts'

views, this difference, together with the SCA's legislative history, supports the

conclusion that *Doe* is not persuasive and plaintiffs "need not prove actual damages

---

[9] *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1045–46 (N.D. Cal. 2018); *Aguiar v. MySpace LLC*, CV 14-05520 SJO (PJWx), 2017 WL 1856229, at *9–10 (C.D. Cal. May 5, 2017); *Chavan v. Cohen*, No. C13-01823 RSM, 2015 WL 4077323, at *4 (W.D. Wash. July 6, 2015); *Joseph v. Carnes*, 108 F. Supp. 3d 613, 618 (N.D. Ill. 2015); *Brooks Grp. & Assocs., Inc. v. LeVigne*, No. 12-2922, 2014 WL 1490529, at *8–10 (E.D. Pa. Apr. 15, 2014); *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2014 WL 812401, at *6–7 (N.D. Ill. Mar. 3, 2014); *Shefts v. Petrakis*, 931 F. Supp. 2d 916, 919 (C.D. Ill. 2013); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 428 (S.D.N.Y. 2010); *Hahn v. Rothman*, No. CV 09-0249 ODW (FFMx), 2010 WL 11507395, *4–5 (C.D. Cal. Oct. 8, 2010); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 975–976 (M.D. Tenn. 2008); *Freedman v. Town of Fairfield*, No. 3:03CV01048 (PCD), 2006 WL 2684347, at *3 (D. Conn. Sept. 19, 2006); *In re Hawaiian Airlines, Inc.*, 355 B.R. 225, 230–31 (Bankr. D. Haw. 2006); *Cedar Hill Assocs., Inc. v. Paget*, No. 04 C 0557, 2005 WL 3430562, at *2–3 (N.D. Ill. Dec. 9, 2005).

in order to be entitled to the minimum statutory damages provided by § 2707(c)." *Id.* Not surprisingly, Mr. Seale asks us to adopt the reasoning of these decisions, and Mr. Peacock advances the position adopted by the federal circuits that have considered the issue.

### iii. Interpreting the SCA

We now resolve de novo whether the SCA requires plaintiffs to show actual damages to be eligible for statutory damages. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1231 (10th Cir. 1997) (applying de novo review to a statutory interpretation). Ultimately, we agree with our sibling circuits and hold plaintiffs must show actual damages from a SCA violation before they are eligible to recover statutory damages.

When interpreting a statute, "we begin by examining the statute's plain language, and if the statutory language is clear, our analysis ordinarily ends." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (quotation marks omitted). But where the statutory language is ambiguous, "we look to the legislative history and the underlying public policy of the statute." *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (quotation marks omitted). Here, the text of the SCA compels the conclusion that actual damages are necessary, but we would reach the same conclusion even if the SCA were ambiguous.[10]

---

[10]Although the Supreme Court did not explicitly state the comparable language in the Privacy Act was ambiguous, it did look to the legislative history of the statute in its analysis. *Doe v. Chao*, 540 U.S. 614, 622–23 (2004). We do the same here. *Cf.*

19

Recall that under § 2707(c),

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

The Privacy Act, 5 U.S.C. § 522a(g)(4), has similar language, but it is not identical. The Privacy Act contains mandatory language—"the United States *shall* be liable," 5 U.S.C. § 552a(g)(4) (emphasis added)—while the language of the SCA is permissive—"[t]he court *may* assess damages," 18 U.S.C. § 2707(c) (emphasis added). Mr. Seale assigns great significance to this difference. He suggests the permissive language of the SCA, unlike the mandatory Privacy Act counterpart, provides that actual damages are not the only form of damages permitted under the statute and that the statutory damages of $1,000 is another permissible form of damages, irrespective of whether a plaintiff has incurred actual damages. We are not persuaded.

Subsection (c) has three sentences, and each expressly identifies a different type of recovery available to a plaintiff: actual damages/profits made by the violator/statutory damages, punitive damages, and costs and attorney's fees. And each of these sentences uses the permissive word "may." So, while Mr. Seale is on

---

*Shefts*, 931 F. Supp. 2d at 919 (criticizing the *Van Alstyne* court's decision not to consider legislative history).

the right track when he suggests the word "may" tells courts actual damage is not the only kind of recovery available, he misses the mark in assuming this language speaks to whether a plaintiff can recover statutory damages without showing actual damages.

The permissive language is consistent with the language and structure of the statute, which provides flexibility to the court in fashioning an appropriate remedy. Pursuant to the plain language of the SCA, a court could award actual damages/profits made by the violator/statutory damages, punitive damages, and/or costs and attorney's fees in a successful SCA action. But there is nothing about that discretion that indicates statutory damages are available in the absence of actual damages. Instead, the "use of the word 'may' . . . conveys only that, where actual damages or a violator's profits exist, a court has discretion to decide whether to award to the plaintiff actual damages or profits of the violator, or both or neither, when these damages exceed $1,000." *Vista Mktg.*, 812 F.3d at 972. The permissive language does not support Mr. Seale's interpretation of the statute. Instead, it leaves unanswered the question of whether statutory damages are available for a violation of the SCA without a showing of actual damages.

In all other respects, the first sentence of subsection (c) is substantially similar to the comparable provision in the Privacy Act. *Van Alstyne*, 560 F.3d at 205. Thus, we look to *Doe* for guidance. Like the Privacy Act, the SCA "has made specific provision . . . for what a victim . . . may recover." *Doe*, 540 U.S. at 620. The "actual damages" provision begins by authorizing a court to award actual damages and profits made by the violator. But the sentence continues: "in no case shall a person

21

entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). As a result, just as in *Doe*, we must determine what constitutes "a person entitled to recover." *Id.* Because the statutory damages provision is in the same sentence that provides for actual damages, "the simplest reading of that phrase looks back to the immediately preceding provision for recovering actual damages." *Doe*, 540 F.3d at 620; *see also Van Alstyne*, 560 F.3d at 206 ("The reference to a person 'entitled to recover' in § 2707(c) is best read, just as in *Doe*, to refer back to the beginning of that sentence, that is, a person who 'suffered' actual damages." (emphasis omitted)). We agree with the circuits that have considered this issue, that the language of the SCA requires a plaintiff to show actual damages as a prerequisite for statutory damages.

Further, contrary to Mr. Seale's suggestion, the legislative history does not undermine this interpretation. The relevant legislative history includes Senate Report No. 99-541 and House Report No. 99-647, *Shefts*, 931 F. Supp. 2d at 918–19,[11] which describe the then-proposed Electronic Communications Privacy Act ("ECPA"), of

---

[11] Mr. Seale's argument regarding the legislative history consists of only two sentences containing general quotations from *Maremont*, 2014 WL 812401. He does not cite the legislative history he believes supports his position. Thus, Mr. Seale likely waived his legislative history argument "by inadequately briefing it." *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("Cursory statements, without supporting analysis and [citations] are inadequate." (internal quotation marks omitted)); *see also* Fed. R. App. P. 28(a)(8)(A). Nevertheless, we exercise our discretion to consider the argument because we think it important for a complete statutory interpretation analysis. *See United States v. Moya*, 5 F.4th 1168, 1193 (10th Cir. 2021) ("[W]hether issues should be deemed waived is a matter of discretion." (quotation marks omitted)).

22

which the SCA is a part. When discussing the damages for a civil action brought for a violation of the SCA, the Senate Report says "damages . . . includ[e] the sum of actual damages suffered by the plaintiff and any profits made by the violator as the result of the violation as provided in (c) with minimum statutory damages of $1,000." S. Rep. No. 99-541, at 43. The House Report says, "[d]amages include actual damages, any lost profits but in no case less than $1,000." H.R. Rep. 99-647, at 74.

Nothing in these statements is inconsistent with our textual interpretation of the statute. Both reports could be read as suggesting a plaintiff must have actual damages, but if those damages are less than $1,000, the statute provides for an award of $1,000. And while the statements might also be interpreted to the contrary, neither report expressly speaks to whether actual damages are necessary to be eligible for statutory damages. *See Vista Mktg.*, 812 F.3d at 974 (explaining why the text of the Senate and House Reports do not "give a clear indication" that Congress intended to allow statutory damages without showing actual damages).

Moreover, unlike the final statute, the reports refer to a prior version of the SCA that was never adopted and did not include punitive damages. This difference is significant, because the punitive damages provision "allows the statute to serve as a deterrent to would-be violators even when they think their violations will inflict no actual damages, and it permits victims to recover in an appropriate case even when they can prove no actual damages." *Id.* at 973 (citing *Van Alstyne*, 560 F.3d at 209 (holding the SCA permits a plaintiff to recover punitive damages without showing actual damages)). "Conceivably, the availability of punitive damages under the

23

adopted version of the statute could have been a consideration in Congress's determination of whether to provide for statutory damages in the absence of actual damages and a violator's profits." *Id.* at 973–74. For these reasons, the legislative history, even if relevant to our analysis, does not support a different interpretation of the statutory text.

In sum, we hold plaintiffs cannot recover statutory damages under the SCA without first showing they suffered actual damages. Accordingly, we must now determine whether Mr. Seale alleged actual damages in support of his SCA claim.

### b. Damage allegations

We review de novo whether Mr. Seale alleged actual damages related to the alleged SCA violation such that the claim could survive a motion to dismiss. *Strain*, 977 F.3d at 989. We hold he did not.

As to damages caused by the SCA violation, Mr. Seale alleged only that "[s]ubsequent to the mailing of the [letters]," (1) four real estate agents left his company; (2) three clients stopped communicating with him; and (3) two non-profit agencies stopped associating with his business. App. Vol. 1 at 160–61. None of these losses are connected to the alleged unauthorized access of his CTM account because the anonymous person mailed the letters more than one year *before* Mr. Peacock allegedly accessed the CTM account without authorization. The Amended Complaint is therefore insufficient to support an inference that Mr. Seale suffered actual

damages caused by the CTM account access. And the magistrate judge correctly dismissed the SCA claim for failing to allege actual damages.[12]

### B.    Dismissal With Prejudice

Mr. Seale next argues the magistrate judge erred by dismissing the claims against Mr. Peacock with prejudice. "We review the [magistrate] judge's dismissal with prejudice for an abuse of discretion." *United States ex rel Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 809 (10th Cir. 2002). We have held "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) *and* granting leave to amend would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation marks omitted). Both of these questions are issues of law that we consider de novo. *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010).

We now evaluate de novo whether granting leave to amend on the three claims alleged against Mr. Peacock—statutory civil theft, violation of the SCA, and invasion of privacy by appropriation of name or likeness—would be futile. Specifically, we consider whether an amendment of these claims would be subject to dismissal under

---

[12] Mr. Seale also argues we should reverse the magistrate judge's decision because he adequately stated a claim for punitive damages and attorney's fees. As Mr. Peacock notes, Mr. Seale failed to raise these arguments before the magistrate judge, and they are therefore not preserved. Nor does Mr. Seale argue plain error on appeal. Thus, Mr. Seale waived the arguments, and we do not consider them on appeal. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue *and also* fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all." (emphasis added)).

Rule 12(b)(6) for failure to state a claim. *Full Life Hospice, LLC v. Sebelius*, 709

F.3d 1012, 1018 (10th Cir. 2013). Applying this standard, we conclude the magistrate

judge correctly dismissed the statutory civil theft claim with prejudice, but we

reverse and remand with instructions to dismiss the SCA claim and the invasion of

privacy by appropriation of name or likeness claim without prejudice.

**1.  Statutory Civil Theft**

To state a claim for civil theft under Colorado law, a plaintiff must allege the

defendant "'knowingly obtains, retains, or exercises control over anything of value of

another without authorization or by threat or deception,' and acts intentionally or

knowingly in ways that deprive the other person of the property permanently." *Van*

*Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 21, 373 P.3d 603, 608 (quoting Colo.

Rev. Stat. § 18-4-401(1)). The Colorado Supreme Court has clarified that the statute

requires "the specific intent to permanently deprive the owner of the benefit of

property." *Id.* (quoting *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000)).

Mr. Seale has not alleged that Mr. Peacock intended to permanently deprive him

of property and its benefit. Although Mr. Seale alleges Mr. Peacock accessed sensitive

business information, there is no contention that Mr. Peacock deleted any of that

information so that it was no longer available to Mr. Seale. Accessing and viewing

electronic information that remains accessible to the information's rightful owner cannot

amount to a permanent deprivation of property. And to the extent Mr. Seale argues he

lost clients and employees, people are not property or things that can be the subject of a

civil theft claim. *See Property*, BLACK'S LAW DICTIONARY (11th ed. 2019)

(including land, chattel, and intangible resources in the definition of property). Thus, the Amended Complaint does not support the necessary elements for statutory civil theft, and any amendment would be futile. We therefore affirm the dismissal with prejudice of the statutory civil theft claim.

## 2. Violation of the Stored Communications Act

As addressed previously, the magistrate judge properly dismissed Mr. Seale's SCA claim because Mr. Seale failed to allege actual damages. However, this is a failure Mr. Seale could remedy. Unlike statutory damages, the text of the SCA does not connect an award of punitive damages with a showing of actual damages. 18 U.S.C. § 2707(c). Instead, under the statute, punitive damages are contingent on the "willful or intentional" nature of the SCA violation. *Id.* SCA plaintiffs, therefore, may recover punitive damages regardless of whether they suffered any actual damages.[13] Thus, Mr. Seale could remedy his SCA claim by amending his complaint to expressly request punitive damages. Therefore, we reverse the dismissal with prejudice and remand with instructions to dismiss the SCA claim without prejudice.

---

[13] Federal courts agree that an award of punitive damages under the SCA is not contingent on a showing of actual damages. *See Van Alstyne*, 560 F.3d at 209 (holding in the context of the SCA that "proof of actual damages is not required before an award of either punitive damages or attorney's fees"); *Domain Prot.*, 2020 WL 2557043, at *14 ("[A]ctual damages are not required for punitive damages under the SCA."); *Maremont*, 2014 WL 812401, at *8 ([A] plaintiff need not prove actual damages to recover punitive damages, attorney's fees, or costs for an SCA violation."); *Chadha v. Chopra*, No. 12 C 4204, 2012 WL 6044701, at *4 (N.D. Ill. Dec. 5, 2012) ("The federal courts are in agreement that a party can recover punitive damages and attorneys' fees even without proving actual damages' under the SCA); *Hahn*, 2010 WL 11507395, at *5 (holding "punitive damages are permissible absent proof of actual damages" from an SCA violation).

27

### 3. Invasion of Privacy by Appropriation of Name or Likeness

To state a claim for invasion of privacy by appropriation of name or likeness under Colorado law, a plaintiff must allege "(1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purpose or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred." *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001) (en banc). In the Amended Complaint, Mr. Seale alleged Mr. Peacock appropriated his name or likeness by using Mr. Seale's login credentials to access his CTM account.

As with the SCA claim, the magistrate judge dismissed the invasion of privacy claim because Mr. Seale had not adequately alleged damages. Mr. Seale could remedy this deficiency through further amendment by including factual support for the mental anguish he allegedly suffered from the invasion of his privacy. *See id.* (expressly allowing plaintiffs to recover personal damages such as mental anguish for invasions of privacy by appropriation of name or likeness).

However, in reviewing the futility of this claim de novo, we are hindered by the unsettled status of Colorado law. It is unclear whether Colorado would treat the unauthorized use of another's username and password to log into an account as an appropriation of name or likeness. Specifically, the Colorado Supreme Court has not addressed whether a username and password combination constitutes a "name" for purposes of this claim or whether, even if such is a name, a defendant must use it in public to appropriate it. These arguments were not raised by the parties or considered

28

by the magistrate judge, and we cannot determine whether it is "patently obvious"

that these facts could not support a claim for invasion of privacy by appropriation of

name or likeness under Colorado law. *See Knight*, 749 F.3d at 1190 (stating a court

can sua sponte adjudicate a claim under Rule 12(b)(6) only "when it is patently

obvious that the plaintiff could not prevail on the facts alleged and allowing her an

opportunity to amend her complaint would be futile." (quotation marks omitted)). For

purposes of this appeal, we assume, without deciding, that amendment would not be

futile. *See id.*; *cf.* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and

Procedure* § 1487 (3d ed. 2021) ("If a proposed amendment is not *clearly* futile, then

denial of leave to amend is improper." (emphasis added)). Accordingly, we reverse

and remand the dismissal with prejudice and instruct the magistrate judge to dismiss

this claim without prejudice.

### C.   *Motion to Amend*

We turn now to the denial of Mr. Seale's motion to further amend the

complaint to substitute Mr. Peacock for the unknown defendants, which we review

"for abuse of discretion." *Albers*, 771 F.3d at 700–01.

Motions to amend pleadings prior to trial are governed by Federal Rules of

Civil Procedure 15 and 16. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th

Cir. 2015). As relevant here, Rule 15(a)(2) states, "a party may amend its pleading

only with the opposing party's written consent or the court's leave. The court should

freely give leave when justice so requires." After a scheduling order deadline for

amending the pleadings has passed, however, "a party seeking leave to amend must

29

demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch*, 812 F.3d at 1247 (quotation marks and brackets omitted). The good cause standard "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* (quotation marks and brackets omitted).

Mr. Seale argues the magistrate judge abused her discretion in denying his motion because she incorrectly applied the good cause standard. Specifically, he contends the magistrate judge had previously extended the amendment deadline in the scheduling order such that only Rule 15(a)(2) applied, which contains no good cause requirement. But in interpreting the order, the magistrate judge concluded the deadline for amending the pleadings had not been extended. We give deference to the magistrate judge's interpretation of her own order, and we will reverse only if "the record clearly shows an abuse of discretion." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 872 (10th Cir. 2018) (quoting *Chi., Rock Island & Pac. R.R. v. Diamond Shamrock Ref. & Mktg. Co.*, 865 F.2d 807, 811 (7th Cir. 1988)).

The magistrate judge's order granting Mr. Seale's fourth motion seeking additional time to serve the unknown defendants states,

> ORDER granting in part [48] Fourth Motion Requesting Additional Time to Obtain Service of Process Upon Unknown Defendants. This case was filed one year ago. Plaintiff has not identified or located the unknown defendants, despite multiple extensions of the deadline to serve the defendants. Plaintiff is granted an extension to and including November 30, 2020, to identify and serve the unknown defendants. If Plaintiff fails to serve the unknown defendants by November 30, 2020, the court will

dismiss the claims against the unknown defendants without prejudice pursuant to Fed. R. Civ. P. 4(m). No further extensions of this deadline will be granted.

App. Vol. 2 at 36.

There is no language in the order that extends the time to amend the pleadings. Nor did Mr. Seale expressly seek an extension of the time to amend the pleadings or join new parties.[14] Nevertheless, Mr. Seale argues the order necessarily extended the amendment deadline because the only way to serve the unnamed defendants is by first amending the complaint to identify them. In other words, Mr. Seale argues the magistrate judge's interpretation is impossible: it requires him to serve the unknown defendants without first amending the complaint to join them.

While it is true that substituting a named defendant for an unnamed defendant requires amending the complaint, *see McPhail v. Deere & Co.*, 529 F.3d 947, 952

---

[14] In his motion, Mr. Seale's recognized that he would

> need to seek leave to amend the Complaint with respect to the claims against Unknown Defendant(s) in order to name such person(s) in the place of Unknown Defendant(s). However, [Mr. Seale] will not be in a position to seek leave to amend the Complaint, or to serve the party or parties to be substituted for Unknown Defendant(s) by . . . the current deadline for service authorized by the court.

App. Vol. 2 at 33. But he did not reference or seek to extend the time to amend the pleadings or join parties. Rather, he labeled the motion as a "Fourth Motion Requesting Additional Time to Obtain Service of Process upon Unknown Defendants," *id.* at 30, and he argued only that he had "good cause for his failure to serve Unknown Defendant(s)," *id.* at 34. The only request he made in that motion was "that pursuant to Fed. R. Civ. P. 4(m), the Court enter an order extending the deadline by which Unknown Defendants must be served, and allowing Plaintiff up to and including December 31, 2020 to effectuate service upon unknown Defendants." *Id.* at 34. Together, these factors show Mr. Seale brought the motion to extend the service deadline and not the deadline to amend the pleadings or join parties.

31

(10th Cir. 2008) (suggesting amendment is the proper way to substitute named defendants for unnamed defendants), it was not impossible for Mr. Seale to comply with the magistrate judge's interpretation of the order. Under the magistrate judge's interpretation, the order extended the time to allow Mr. Seale to serve the unknown defendants, but it did not extend the time to amend the complaint to join them as parties. In practice, the extension of the time to serve the unknown defendants assured Mr. Seale that his claims against the unknown defendants would not be dismissed for failing to serve the complaint before the new deadline. By not also extending the time to amend the complaint, however, the magistrate judge reserved the opportunity to review the proposed amended complaint to ensure that the amendment was supported by good cause. Although the good cause standard is a more difficult standard, *see Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (stating Rule 16 is "an arguably more stringent standard than the standards for amending a pleading under Rule 15"), this is not an impossible task. Indeed, even after receiving an extension of the time to serve the unknown defendants, Mr. Seale recognized he needed leave to amend the complaint before he could serve the unknown defendants. *See* App. Vol. 2 at 38 ("Because Plaintiff must serve that individual by November 30, 2020, he is submitting this motion [for leave to file an amended complaint] on a forthwith basis."). There is no reason why it would have been impossible for Mr. Seale to show good cause supporting the motion to amend. And if he had met that burden, the magistrate judge would have permitted him to

32

substitute Mr. Peacock for the unknown defendants, and he would have been able to serve Mr. Peacock with the amended complaint.

In summary, a party *must* show good cause to extend a deadline in the scheduling order. *Birch*, 812 F.3d at 1247; *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified *only* for good cause and with the judge's consent." (emphasis added)). But Mr. Seale never attempted to show good cause to extend the time to amend the pleadings/join parties. Accordingly, the magistrate judge's interpretation of the order was not a clear abuse of discretion. Instead, it was (1) consistent with the language of the order and Mr. Seale's request for an extension of the time to serve the unknown defendants, (2) possible to satisfy, and (3) consistent with our precedent and the requirements of the Federal Rules of Civil Procedure. Thus, the magistrate judge did not abuse her discretion in concluding that she had not extended the deadline to amend the pleadings and applying the good cause standard.

Mr. Seale next argues that even if the magistrate judge did not err by applying the good cause standard, we should reverse the decision because Mr. Seale satisfied that standard. But Mr. Seale has not explained why the magistrate judge's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) (quotation marks omitted). To the contrary, Mr. Seale recognizes there were reasons in the record supporting the magistrate judge's decision, including the fact that he "was in possession of photographs that provided the basis for his Second Motion to Amend the Complaint

throughout the litigation." Appellant Br. at 50. He argues simply that the magistrate judge should have come to a different conclusion because he had shown reasonable diligence in other ways. But it is not our place to reconsider the circumstances and determine anew whether Mr. Seale had shown good cause. The record supports the magistrate judge's conclusion, and she did not abuse her discretion in denying the motion. For these reasons, we affirm the magistrate judge's order denying Mr. Seale's motion for leave to file the amended complaint naming the unknown parties.

## III.    CONCLUSION

In sum, we AFFIRM IN PART and REVERSE AND REMAND IN PART. Specifically, we AFFIRM the dismissal of Mr. Seale's SCA claim under Rule 12(b)(6). We AFFIRM the dismissal with prejudice of the statutory civil theft claim. We REVERSE AND REMAND the dismissal with prejudice of the SCA claim and the invasion of privacy by appropriation of name or likeness claim and instruct the court to dismiss these claims without prejudice.[15] We also AFFIRM the order denying Mr. Seale's motion to amend.

---

[15] We deny Mr. Peacock's request for attorney's fees on appeal. Because the claims remain dismissed for failure to state a claim under Rule 12(b)(6), we leave in place the magistrate judge's order granting Mr. Peacock attorney's fees under Colo. Rev. Stat. § 13-17-201.